UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-358 (JMB/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTIONS IN LIMINE** |
| v. | |
| DERRICK JOHN THOMPSON, | |
| Defendant. | |

The United States of America, by and through its undersigned attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorneys Ruth S. Shnider and Thomas Calhoun-Lopez, respectfully submits its response to defendant Derrick Thompson's Second Motions in Limine. (ECF No. 68 (Def. Mot. II)).

## RESPONSE TO MOTIONS *IN LIMINE*

### 1. Defendant's Motion to Exclude Expert Testimony

Thompson moves to preclude the testimony of Special Agent Michael Flanagan of the Minnesota Bureau of Criminal Apprehension. (Def. Mot II at 1–4.) The United States opposes the majority of this motion.

The Eighth Circuit has consistently upheld the admission of expert testimony to discuss the modus operandi of drug traffickers, because such activities are "not something with which most jurors are familiar." *United*

*States v. Gill*, 513 F.3d 836, 847 (8th Cir. 2008). In fact, the Eighth Circuit has noted that such testimony is now "almost routine in drug cases." *Id.*, quoting *United States v. Ortega*, 150 F.3d 937, 943 (8th Cir. 1998). Such expert testimony is often necessary to help the jury understand "the business of drug trafficking." *Gill*, 513 U.S. at 847, quoting *United States v. Urbina*, 431 F.3d 305, 312 (8th Cir. 2005).

In fact, a litany of cases in the Eighth Circuit have upheld § 924(c) convictions *based* on expert testimony, considering it practically a *sine quo non*. "The jury may infer the requisite nexus between the firearm and the crime 'when the firearm is kept in close proximity to the drugs, it is quickly accessible, *and there is expert testimony regarding the use of firearms in connection with drug trafficking*.'" *United States v. Fetters*, 689 F.3d 653, 658 (8th Cir. 2012), quoting *United States v. Close*, 518 F.3d 617, 619 (8th Cir.2008) (emphasis added, internal brackets omitted). *See also United States v. Robinson*, 617 F.3d 984, 989 (8th Cir. 2010); *United States v. Lindsey*, 507 F.3d 1146, 1148 (8th Cir.2007); *United States v. Hilliard*, 490 F.3d 635, 641 (8th Cir. 2007); *United States v. Sanchez–Garcia*, 461 F.3d 939, 946 (8th Cir.2006).

Consistent with this long-standing precedent, the United States should be allowed to offer the testimony of Special Agent Flanagan to help the jury understand the modus operandi of drug traffickers and the relationship of firearms to drug trafficking.

The United States does not intend to offer evidence of the "dangers and lethality" of fentanyl; the United States agrees that those issues are not relevant and would be prejudicial.

Evidence of how fentanyl is ingested by users, however, is relevant. The evidence will establish that Thompson's phone contains multiple communications about fentanyl (often referred to as "blues) and other drugs, including the following exchange:

> What you got?
> 11:08:06 pm
>
> Both them kinds of blues u gave me wasnt good at all bro
> 11:08:34 pm
>
> The dark blue ones ain't even burn at all on the foil
> 11:09:35 pm

Methods of ingestion, including the use of flame and tinfoil, is necessary to establish that these references are in fact to fentanyl.

By the same token, testimony that Arizona is a "source state" for fentanyl is likewise relevant and admissible. Thompson's phone contains evidence that Thompson travelled to Arizona for a three-day trip from June 10, 2023, to June 13, 2023—days before he was arrested in possession of the instant fentanyl. Evidence that Arizona is a common source of illegal fentanyl in Minnesota is therefore probative of Thompson's knowing possession of the fentanyl.

3

Relatedly, testimony about drug hierarchies is likewise admissible. Texts in Thompson's phone indicates that, in addition to obtaining fentanyl from Arizona, he is buying fentanyl in bulk in order to sell it at profit. The texts on his phone indicate he sold drugs both to other dealers ("middlemen" of sorts) and to end-users. An explanation of the role(s) he occupied within a hierarchy and chain of commerce is therefore relevant and admissible to show the nature and parameters of his drug trafficking scheme.

Testimony regarding personal-use quantities versus distribution quantities is also admissible. The United States does not intend to belabor this topic, but also does not agree with Thompson's assertion that it is self-evident—to the contrary, most jurors probably have no idea how much fentanyl a user might possess versus how much a trafficker might possess. The United States has the burden of proving all elements of the offenses beyond a reasonable amount, including the element that the defendant intended to distribute the fentanyl seized.

Finally, testimony discussing coded language or slang in Thompson's text messages is admissible. Such testimony has long been approved by the Eighth Circuit and other circuits and is common in drug prosecutions. "Law enforcement officers are often qualified as experts to interpret intercepted conversations using slang, street language, and the jargon of the illegal drug trade." *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001), citing

4

*United States v. Delpit*, 94 F.3d 1134, 1144 (8th Cir. 1996) (police officer gave expert testimony interpreting slang and drug codes in connection with recorded telephone calls); *United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir.1 998) (police officer gave expert testimony based on his specialized knowledge of narcotics code terminology); *United States v. Earls*, 42 F.3d 1321, 1324–25 (10th Cir.1994) (expert testimony was proper to show that defendants were speaking in code).

2.  **Defendant's Motion to Exclude Text Messages**

Thompson moves to exclude text messages (including the messages referenced above) from his phone. (Def. Mot. II at 4.)  The United States opposes this motion.

Thompson first objects on hearsay grounds. (*Id.*)  This motion is without merit.  A defendant's statements are admissible at a prosecution when offered against the defendant as a statement by a party opponent. Fed. R. Evid. 801(d)(2).

Thompson also objects on relevance. (Def. Mot. II at 4.)  This claim likewise fails.  The text messages appear to discuss controlled substances, including fentanyl, as well as locations of sales and prices.  Such evidence is clearly relevant in a drug trafficking prosecution.

Finally, Thompson objects pursuant to Fed. R. Evid. 404(b). (Def. Mot. II at 4.)  This argument is without merit.  The jury should be allowed to

5

consider evidence of Thompson's drug trafficking activities to determine whether he knowingly possessed the charged fentanyl with the intent to distribute it. The texts are therefore res gestae—intrinsic to the charged crime. *See United States v. Roberts*, 253 F.3d 1131, 1134 (8th Cir. 2001) (prior conduct constitutes res gestae evidence when it is used "to explain both the genesis and the execution of" drug trafficking.).

### 3. Defendant's Motion to Exclude Evidence of Ammunition

Thompson moves to exclude evidence that the firearm from his vehicle was loaded. (Def. Mot. II at 4–5.) The United States opposes this motion.

Thompson is charged in Count 3 of the Indictment with carrying a firearm during *and in relation to* a drug trafficking crime. (ECF No. 8 at 2–3 (emphasis added).) Consistent with a long line of cases, the United States intends to establish that Thompson carried the firearm to protect his drugs and his cash. The fact that the firearm was loaded is therefore relevant and probative to show that the firearm could be used at a moment's notice. *See, e.g., United States v. Mejia*, 8 F.3d 3, 5 (8th Cir. 1993) (affirming a § 924(c) conviction in part because officers found a loaded handgun, and noting that the gun was "readily available and could easily have been used by Mejia to protect his drug supply, should the need have arisen. Thus, the weapon had the potential of facilitating the drug transaction."). In addition, a firearm with an extended magazine is a much larger object—unlikely to go unnoticed by a

6

person who possesses the small black bag that it was found in. The magazine thus also goes to the basic issue of knowing possession.

4. **Defendant's Motion to Exclude Drug Evidence**

Thompson moves to exclude evidence of marijuana, cocaine, and MDMA/ecstasy found with the charged fentanyl in this case. (Def. Mot. II at 5–9.) The United States opposes this motion.

The presence of other drugs found in close proximity to the charged fentanyl (most in the very same small bag) is intrinsic evidence to the charged crime. Intrinsic evidence supplies "the context in which the charged offense occurred," "provides a total picture of the charged crime, or tends logically to prove [an] element of the crime charged, and is subject to testing under regular principles of admissibility." *United States v. Buckner*, 868 F.3d 684, 688 (8th Cir. 2017). Here, all the controlled substances were found within inches of each other, and all but the marijuana were found in the same satchel bag, along with the gun. This evidence indicates that Thompson was engaged in poly-substance distribution, which the Government's drug trafficking expert will explain is itself probative evidence that he was a drug trafficker operating at a certain level of scale and sophistication. Further, given the close proximity of all the drugs, proof that Thompson possessed *any* of them tends to show that he possessed *all* of them. For example, the evidence will show that the defendant's DNA was found on the cocaine packaging, and there are texts in

his phone about selling "white girl" (slang for cocaine). This evidence shows that all the contents of the black satchel bag, including the fentanyl pills and powder, were in Thompson's possession and he intended to distribute them.

### 5. Defendant's Motion to Preclude the Word "Felon"

Thompson moves to preclude use of the word "felon" at trial, and instead use the term "prohibited person." (Def. Mot. II at 9–12.) He also argues that even the formulation that he had been "convicted of an offense punishable by a term of imprisonment exceeding one year" should be sanitized from any stipulation under *Old Chief v. United States*, 519 U.S. 172 (1997), and from the jury instructions. The United States opposes this motion.

As Thompson concedes, a district court in this District considered this argument and rejected it. In *United States v. Smith*, the district court found that an *Old Chief* stipulation "must include the fact that Defendant had been convicted of an offense punishable by a term of imprisonment exceeding one year." No. CR 12-183 SRN/AJB, 2012 WL 6093021, at *2 (D. Minn. Dec. 7, 2012). The *Smith* Court noted that its holding was consistent with *Old Chief* itself, which required the government to stipulate that the defendant had "been convicted of a crime punishable by imprisonment exceeding one (1) year." *Id.* (quoting *Old Chief*, 519 U.S. at 190). The *Smith* Court also noted that its holding was likewise consistent with Eighth Circuit precedent stating that when a "defendant's status as a *felon* is an element of the crime charged, all

8

the jury needs to know is that he is a *felon* for purposes of the crime charged." *Id.* (emphasis in original) (quoting *United States v. Mahasin*, 442 F.3d 687, 690 (8th Cir. 2006)).

The reasoning in *Smith*, consistent with precedent of the Supreme Court and the Eighth Circuit, should apply here. The Court should reject Thompson's attempt to change the nature of the crime and its elements. Thompson is not charged with "prohibited person in possession of a firearm"; indeed neither federal law nor the Eighth Circuit contemplate such an offense. Thompson cites no cases that support creating a novel, fictional crime for the jury to consider. Thompson relies upon cases from the Southern District of New York and the Sixth Circuit. (Def. Mot. II at 10, citing *United States v. Scott*, No. 21 CR. 429 (AT), 2022 WL 1026725, at *3 (S.D.N.Y. Apr. 5, 2022); *United States v. Ray*, 803 F.3d 244, 260 (6th Cir. 2015). But these cases do not support using a term not found in the statute nor instructions—"prohibited person." In *Scott* the district court required the government to refer to the defendant not as a felon but rather as someone who had been "convicted of a crime carrying a potential sentence of more than one year." 2022 WL 1026725, at *3. In *Ray*, the Sixth Circuit approved the use of the word "felon," though it expressed preference for using "the language of the statute"—i.e., someone who had been convicted of an offense punishable by imprisonment for a term exceeding one year. 803 F.3d at 260.

The Eighth Circuit instructions require the United States to prove that Thompson "had been convicted of a crime punishable by imprisonment for more than one year." Manual of Model Criminal Jury Instructions for the Eighth Circuit, §§ 1.02, 6.18.922A (2023). The United States must meet this burden, either by stipulation or by proof of convictions at trial. This motion should be denied.

## CONCLUSION

The Government respectfully asks this Court to enter an Order consistent with the Government's responses, as well as its own motions in limine.

Dated: October 1, 2024

ANDREW M. LUGER
United States Attorney

*/s/ Ruth Shnider*

BY: RUTH S. SHNIDER
THOMAS CALHOUN-LOPEZ
Assistant U.S. Attorneys